**UNITED STATES of America,**

v.

**Sunday OBIALO, Appellant.**

**No. 93–1648.**

United States Court of Appeals,
Third Circuit.

Argued March 2, 1994.

Decided April 28, 1994.

Maureen Kearney Rowley, Chief Federal Defender, Elaine DeMasse, Asst. Federal Defender, Sr. Appellate Counsel, David L. McColgin (argued), Asst. Federal Defender, Defender Assn. of Philadelphia, Philadelphia, PA, for appellant.

Michael J. Rotko, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Linwood C. Wright, Jr. (argued), Asst. U.S. Atty., Philadelphia, PA, for appellee.

Before: SLOVITER, Chief Judge, ALITO, Circuit Judge and PARELL,* District Judge.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Appellant Sunday Obialo challenges his conviction and sentence after a jury trial in which he was convicted of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846 (1988), and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). Obialo's challenge to his conviction on the substantive count of possession centers on alleged trial errors, but we find no merit to his contention and we will affirm that conviction.[1]

His other argument merits more attention. Obialo contends that the evidence was insufficient to sustain his conviction for conspiracy because there was no substantial evidence that he entered into a criminal agreement with any other person. This requires us to consider the minimum quantity of evidence the government must introduce to sustain a conspiracy conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

## I.

In the spring of 1992, Obialo moved into an apartment on Griscom Street in Philadelphia and shortly thereafter began discussing with neighbor Jeffrey Bahamonde, an ex-convict

---

* Hon. Mary Little Parell, United States District Judge for the District of New Jersey, sitting by designation.

1. Obialo argues that the district court denied him due process and a fair trial by unfairly limiting the scope of cross examination of the informant on an issue relevant to his credibility, while at the same time permitting the government to elicit from the informant that he moved because he was afraid of Obialo. After review of this argument, the trial transcripts, and the relevant case law, we conclude that it does not warrant reversal of Obialo's conviction on the possession count.

recently arrested for a drug offense, the possibility of distributing heroin in Philadelphia. Obialo told Bahamonde that he had access to large amounts of heroin. Unknown to Obialo, Bahamonde was acting as a confidential informant for the Philadelphia police.

Obialo gave Bahamonde a matchbook of brown heroin to show to a prospective client. Later, Obialo showed Bahamonde a large flat quantity of heroin wrapped in a plastic sheet measuring approximately 8½" × 10". Bahamonde testified about this as follows:

Q. Please continue. What did he say, if anything, regarding [heroin in plastic sheets]—

A. Okay. It was put in books and brought through customs very easily, like sometimes *they* posed as college students and exchange students, like that, and just come through with the books, no questions.

App. at 56–57 (emphasis added).

Bahamonde also testified to the following exchange with Obialo:

A. Well, see at one point when I was trying to establish this customer kind of relationship with him, I asked him how much he had if I needed enough, and he said about 40 ounces.

Q. Did he say how much he believed 40 ounces of heroin could be sold for?

A. Well, early in the conversations he claimed to me that 9,000 an ounce.

Q. Now, did he ever mention New York to you?

A. Okay. One time I told him if I needed it right now, you know, how long would it take? He said it'll take two hours.

Q. And did he say where—or why it would take two hours?

A. Yeah, he had to go to New York to pick it up.

Q. Did he ever represent to you from whom?

A. (No verbal response)

App. at 57.

On August 5, 1992, law enforcement officers searched Obialo's Griscom Street apartment pursuant to a search warrant and recovered a small amount of brown heroin and documents tying Obialo to the Hawthorne Street house of his uncle, Patrick Nweze. The officers proceeded to the Hawthorne Street address, where Mr. Nweze consented to a search of his home. During that search, the officers discovered a triple beam scale of the type commonly used to weigh controlled substances in Nweze's basement. Later, after securing a search warrant, the officers discovered approximately 1,139 grams of brown heroin secreted in pages of books. Drug Enforcement Agency (DEA) Special Agent Michael Forti testified that the street value of this heroin was $550,000. Obialo, Nweze and his wife, Cordelia, were all charged with state crimes, but thereafter Obialo and Patrick Nweze (hereafter Nweze) were indicted for the federal drug offenses.

After his arrest, Obialo sent counsel a sworn affidavit stating that the "things that was [sic] seized from [the Nwezes'] basement was [sic] kept there by me without their knowledge." Supp.App. at 1. At trial, Obialo stipulated to the affidavit's authenticity.

Before the close of trial, Nweze, who had been indicted only on the conspiracy charge, moved for a verdict of acquittal under Fed. R.Crim.P. 29 based on the lack of evidence against him. The court granted the motion and dismissed Nweze as a defendant. Obialo then moved for a Rule 29 judgment of acquittal on the conspiracy charge (count one), arguing that because Nweze had been acquitted, there was no one with whom he could have conspired. The court denied this motion, relying on the evidence of Obialo's conspiracy with unnamed third parties. The jury convicted Obialo of both the possession and conspiracy counts.

The court sentenced Obialo to 121 months in prison and five years of supervised release on each count to run concurrently, and a special assessment of· $50.00 on each count. Obialo filed a timely notice of appeal.

## II.

In considering Obialo's argument that there was insufficient evidence to support his conviction on the conspiracy charge, we must view the evidence in the light most

favorable to the government as the verdict winner. The question before us is whether there was substantial evidence upon which a reasonable jury could have based its verdict. *See United States v. Pungitore*, 910 F.2d 1084, 1128–29 (3d Cir.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991).

In order to prove that Obialo was guilty of conspiracy, the government was obliged to show that he conspired with named or unnamed third parties. As noted, the district court found that there was insufficient evidence for the jury to conclude that defendant Nweze was engaged in a conspiracy with Obialo. In this appeal, the government has not contested that finding, and it therefore follows that there was also insufficient evidence to conclude that Nweze was the necessary other party with whom Obialo conspired. *See United States v. Velasquez*, 885 F.2d 1076, 1090–91 (3rd Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990).

█ The failure of the government to be able to name and personally identify the other conspirator is not fatal to a conspiracy conviction. As the Supreme Court stated in *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951), "the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown."

We quoted from *Rogers* and applied that principle in *United States v. Allen*, 613 F.2d 1248, 1253 (3d Cir.1980). In that case, the defendant Allen was charged along with two codefendants with a conspiracy involving the transportation of more than 1,000 pounds of marijuana from Colorado to Pennsylvania in a rental truck. Although one of the codefendants was acquitted, and the district court held that the evidence against the other codefendant was no greater, this court held that the jury conviction of conspiracy could stand based on the evidence the government adduced at trial. That included evidence showing that Allen left a message with his answering service with detailed instructions for a third person using the name "Stewart"; that "Stewart" retrieved Allen's message; that he proceeded to a motel directed by Allen's message; that a call was made to Allen's answering service from that motel leaving a message with the room number; that someone came to the hotel and asked for that room; that a truck in the parking lot was listed in the motel records as belonging to that room; and that Allen was arrested the next day in possession of the keys to the truck which contained the marijuana. *See id.* at 1253. The phone call by "Stewart" and Allen's control of keys with which he had no physical connection before that day provided sufficient evidence to show the participation of at least one person other than Allen. Thus, even without knowing the identity of "Stewart," the jury could find another person was involved beyond a reasonable doubt.

Similarly, there were facts to support the inference that defendant had formed an agreement with an unknown third party in *Government of Virgin Islands v. Hoheb*, 777 F.2d 138 (3d Cir.1985), a case on which the government relies. In that case, Hoheb and his brother, Parrilla, were indicted for conspiracy with intent to distribute, and possession with intent to distribute marijuana. The jury found both defendants guilty of the lesser included offense of simple possession; it convicted Hoheb of conspiracy but acquitted Parrilla, thereby eliminating him as the co-conspirator.

Because the indictment had also alleged Hoheb conspired with unknown conspirators, this court examined the evidence to ascertain if there was any evidence of such a conspirator. There was evidence that the defendants had agreed with a government informant and a DEA agent to purchase 150 pounds of marijuana in an off-shore transfer, but the arrangements were canceled by defendants. However, Hoheb had drafted a timetable detailing the transfer at sea of the drugs which included not only Parrilla but also another person. Moreover, Hoheb repeatedly referred to the involvement of a third person in his conversations with the confidential informant, even naming that person the day before the transfer was to take place, and Parrilla also had made statements that referred to the involvement of his friend. This was sufficient to permit the jury reasonably

to infer that there was an agreement with a third person, albeit unidentified.

■ The facts in this case stand in sharp contrast to those in *Allen* and *Hoheb* because the government presented no evidence to support the inference that Obialo conspired with *anyone*.[2] The government makes several efforts to proffer a proposed conspiracy, but all those efforts are based on sheer speculation. The government argues that Obialo's statement to Bahamonde that he could retrieve a large quantity of heroin within two hours from New York demonstrated the existence of a conspirator in New York. That statement alone does not support a reasonable inference of an involved other person. We take judicial notice that a trip from Philadelphia to New York and back takes significantly longer than two hours, even without adding the time that would be spent negotiating and finalizing a drug transaction. Even if Obialo did have to go to New York, there is no reason to assume he would acquire the drugs from another person as distinguished from his own stockpile. Bahamonde's testimony, rather than supporting the government's theory, instead supports the inference that Obialo had a *stash*, not a *supplier*, and that this stash was located much closer to Obialo's Griscom Street address than New York. The inference that Obialo had a stash of heroin is supported by the fact that he told Bahamonde that he could supply 40 ounces, an amount equivalent to the amount of heroin discovered in Nweze's home.[3]

■ Nor is there any evidence from which the jury could reasonably conclude that Obialo had an agreement with importers who posed as students based on his statement to Bahamonde that "they" imported heroin that way. Obialo said nothing from which Bahamonde or the jury could conclude that *he* had such an agreement, and thus he made no admissions such as supported the finding of a conspiracy in *Hoheb*. The logical leap which the government asks us to make in construing Bahamonde's testimony in this regard goes far beyond the reasonable inferences to which it is entitled.

■ Finally, the government argues that the jury could find the existence of a conspirator from the sheer amount of heroin (more than one kilogram) that Obialo possessed and his financial problems, leading to the inference that Obialo had purchased the heroin on credit. Although the amount of drugs has been held to be a basis on which the factfinder can infer intent to distribute, the substantial amount of heroin that Obialo possessed is not sufficient, either by itself or in conjunction with the other evidence noted by the government, to support the inference of conspiracy. After all, the government has the obligation to prove all elements of the crime beyond a reasonable doubt. Having eliminated Nweze as a possible conspirator, the government has failed to meet its burden to show that Obialo had an agreement with someone—anyone. It follows that the district court erred in denying Obialo's motion to acquit on the conspiracy charge. We will therefore remand with directions to grant that motion.

## III.

For the foregoing reasons, we will reverse Obialo's conviction on the conspiracy count (count one), affirm his conviction on the sub-

---

2. At oral argument, pursuant to our request, the parties debated the effect that our recent decision in *United States v. Price*, 13 F.3d 711, 726–29 (3d Cir.1994) would have on the nature of the agreement necessary to sustain a conspiracy conviction. In *Price*, we suggested that an agreement to make a single purchase of narcotics alone would not support a conspiracy conviction. We need not decide whether proof of a single purchase agreement is always insufficient to establish a conspiracy because the evidence here fails to show that Obialo ever agreed to even a one-time purchase.

3. The amount of heroin discovered at Patrick Nweze's home was 1,139 grams, the amount of drugs with which Obialo was charged in the indictment. There is a conversion rate in the United States Sentencing Guidelines of 28.35 grams per ounce. *See* U.S.S.G. § 2D1.1 comment. (n. 10). Employing this rate here, the result, 40.18 ounces, corresponds almost exactly to the 40 ounces which Obialo mentioned to Bahamonde.

stantive count (count two), and remand for resentencing.