NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3647
_____

UNITED STATES OF AMERICA

v.

TAUREAN POTTER
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-18-cr-279-002)
District Judge:  Hon. Arthur J. Schwab
_____

Argued
September 24, 2020

Before:   McKEE, JORDAN, and RENDELL, *Circuit Judges.*

(Filed: November 13, 2020)
_____

William C. Kaczynski   [ARGUED]
1004 Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
        *Counsel for Appellant*

Donovan J. Cocas   [ARGUED]
Laura S. Irvin
Office of United States Attorney
700 Grant Street – Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge.*

Taurean Potter was found guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  He now argues that the District Court erred in admitting into evidence a law enforcement agent's testimony under Federal Rule of Evidence 404(b) and that the government did not present enough evidence to sustain his conspiracy conviction.  We disagree and will affirm, on plain error review.

I.      **BACKGROUND**

In 2017, the Pennsylvania Office of Attorney General ("OAG") identified Potter as one of several cocaine distributors selling at bars in Ellwood City.  On October 14, 2017, OAG Special Agent Sean Kirley led an undercover operation with a confidential informant ("CI") and an undercover agent, Scott Patterson.  They first went to the Shelby Bar, where the CI introduced Patterson to a bartender, Kacie Zito, who sold him cocaine.  They then went to the Main Street Bar, where the CI and Patterson met Potter.  The CI

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

told Potter that Patterson wanted to buy cocaine, and the CI and Potter negotiated the purchase.  When that was done, Patterson followed Potter into a bathroom stall, where they exchanged money and cocaine.  Later that night, Patterson asked Potter for more cocaine, and they conducted another exchange at the bar.

Several months later, on February 16, 2018, the same agents and CI conducted a further undercover operation in Ellwood City.  At the Main Street Bar, the CI and Patterson talked to Potter about buying cocaine but did not procure any from him.[1]  The

---

[1] Potter argues that the District Court sustained an objection to Patterson's testimony about that conversation, and the jury therefore could not have relied on it.  The transcript provides as follows:

THE GOVERNMENT: Would you take the members of the jury through what you can recall about your interactions with Taurean Potter on that evening.
AGENT PATTERSON: So, that one was at the same bar, the Main Street in Elwood [sic] City. I was advised that he was there, which is why we went there. Upon entering the bar, he was in the area of the bar, so we sparked up a conversation, myself, him, and the confidential informant.
THE GOVERNMENT: Did he recognize you from the previous transaction?
AGENT PATTERSON: Yes. From there, the conversation went to, as we planned, to purchase cocaine where the CI had effectively asked him to purchase a ball –
DEFENSE COUNSEL: I'm going to object to anything the CI said.
THE COURT: Sustained.
...
THE COURT: Disregard the portion where he spoke about what somebody told him.
THE GOVERNMENT: Did you have instructions to the CI to attempt to purchase cocaine from Taurean Potter that day?
AGENT PATTERSON: Yes.
THE GOVERNMENT: Ultimately, were you able to physically get cocaine directly from Taurean Potter?
AGENT PATTERSON: No.
(App. at 91-92.)

The District Court sustained the objection as to the CI asking to purchase a "ball" of cocaine, but the statement about Patterson, the CI, and Potter having a conversation

3

CI and Patterson then went to the Hazel Manor Bar, where Agent Kirley was waiting and watching. Kirley testified that Dylan Main and Anthony Washington, who were subsequently named in the indictment as Potter's co-conspirators, walked into the bathroom of the bar and emerged together approximately thirty seconds later. Main immediately left the bar. Washington then approached Patterson and sold him cocaine, without any prompting from Patterson to do so. There is no evidence that Washington had ever met Patterson before approaching him to hand him cocaine.

At trial, Potter faced two charges: (1) conspiracy to distribute cocaine, and (2) possession with intent to distribute cocaine.[2] The government presented evidence from five witnesses: Zito, Washington, a cocaine buyer named Jeffrey Vitale, Agent Patterson, and Agent Kirley. Zito testified that she had known Potter her whole life but, contradicting her testimony from her change-of-plea hearing, denied that he was one of her cocaine suppliers. She said she either lied or did not understand the questions when she earlier stated that Potter had supplied her with cocaine. While Zito admitted that

---

that turned to the topic of purchasing cocaine was admitted. Defense counsel objected to "anything the CI said," and the District Court sustained the objection regarding "the portion where he spoke about what somebody told him." (App. at 91-92.) While Potter is correct that the jury was instructed to disregard Patterson's testimony quoting what the CI said, the jury could properly consider the conversation's eventual focus on the purchase of cocaine. Combined with Patterson's instructions to the CI to attempt to purchase cocaine from Potter that day, and the later delivery of cocaine to Patterson, a reasonable trier of fact could infer that the discussion with Potter on February 16, 2018 specifically referenced Patterson's desire to purchase cocaine.

[2] Although the grand jury indicted Potter on a third count of possession with intent to distribute cocaine, stemming from the events on February 16, 2018, the government moved to dismiss that count before Potter's trial. The District Court granted the motion.

"associates of Mr. Potter [had] been pressuring [her] not to testify," she said she did not change her testimony because of that. (App. at 159.)

Washington also testified pursuant to a plea agreement. He said he had been friends with Potter for several years and had purchased cocaine from him a "[c]ouple times" for the purposes of reselling it. (App. at 183-85.) As he described it, Potter had "help[ed]" him out on a "few occasions," as had Dylan Main, by providing cocaine that Washington could resell when Washington was short on supply. (*Id.*) According to Washington, he purchased cocaine from Potter at prices ranging from $200 to $300 per 3.5 grams (an "eight ball"), and the drugs were packaged in a plastic bag. (App. at 185.) Nevertheless, he testified that Potter "had nothing to do with it" when he sold cocaine to Agent Patterson in February of 2018. (App. at 186.) Washington also said that, in March of that year, he stole some cocaine from Potter when he was "just looking in a cabinet" and "saw some." (App. at 186-87.)

Vitale testified that he was a former drug addict who purchased cocaine from Potter "[j]ust a few" times, always at the bar. (App. at 120-22.) Vitale would buy an "eight ball" packaged in a tied plastic bag for $125 to $150. (App. at 122-23.)

During direct examination of Agent Kirley, who witnessed the February 2018 transaction, the government asked, "Now, was there any purchase made from Mr. Potter that night?" (App. at 211.) He responded, "[n]ot directly." (App. at 211.) Defense counsel objected, saying, "I would object, Your Honor, to the characterization, not directly. He knows what he knows." (App. at 211.) The District Court responded, "I'll overrule the objection. That's his answer." (App. at 211.) Defense counsel

acknowledged the ruling and questioning continued, with Agent Kirley describing the drug sale he saw between Washington and Agent Patterson.

The jury found Potter guilty on both counts, and he has timely appealed.

## II. DISCUSSION[3]

Potter raises two issues on appeal. First, he contends that the District Court committed reversible error in admitting into evidence a law enforcement agent's testimony implying that he (Potter) had effectuated an indirect sale of cocaine on February 16, 2018. Second, he argues that the government introduced insufficient evidence to sustain a guilty verdict for conspiracy to distribute cocaine.[4] Given our standard of review, we disagree with both arguments.

### A. "Other Act" Evidence

Potter argues that the District Court erred when it admitted Agent Kirley's testimony that Agent Patterson did "[n]ot directly" receive cocaine from Potter during the February 2018 operation. (App. at 211.) Potter says the testimony was improper "other act" evidence, under Federal Rule of Evidence 404(b).

Properly preserved evidentiary objections are typically reviewed for abuse of discretion, *Gov't of Virgin Islands v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001), and Potter did object to Kirley's "not directly" statement. But Federal Rule of Evidence 103(a)(1)

---

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction under 18 U.S.C. § 3231.

[4] The parties presented the issues in the opposite order. Because our sufficiency of the evidence review necessarily requires us to consider the admissible evidence, we first decide whether the District Court erred in admitting the challenged testimony.

requires "a timely *and specific* objection to evidence erroneously admitted." *United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004) (emphasis added). The objection, "he knows what he knows," was not sufficiently specific to preserve the issue now on appeal, as there was no mention of Rule 404(b) nor any reference to "other act" evidence. *See United States v. Sandini*, 803 F.2d 123, 126 (3d Cir. 1986) (holding an objection on relevance grounds did not properly preserve an "other act" evidence challenge for appeal). Arguing that Kirley "knows what he knows" did not put the District Court on notice that an objection was being made on Rule 404(b) grounds. Thus, we will review for plain error. On plain error review, the defendant must show that there was (1) an error (2) that is plain or obvious, (3) that impacted "the outcome of the district court proceedings," and (4) that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993) (citations omitted).

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It may, however, be admitted for such purposes as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. Before admitting "other act" evidence probative of a material issue other than character, the District Court must determine whether its probative value outweighs its potential for unfair prejudice, under Rule 403. *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013). But evidence of acts that are intrinsic to the offense is, by definition, not evidence of "other acts" and so is not

7

covered by Rule 404(b). *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). "[M]ost circuit courts view evidence as intrinsic if it is 'inextricably intertwined' with the charged offense[.]" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 927-28 (D.C. Cir. 2000). In the case of a conspiracy, "acts are intrinsic when they directly prove the charged conspiracy." *Id.* (citing *United States v. Gibbs*, 190 F.3d 188, 217–18 (3d Cir. 1999)).

Potter argues that Kirley's answer when asked whether Potter sold cocaine to Patterson in February 2018 unfairly suggested that Kirley knew of other evidence of guilt not disclosed to the jury. Potter further says that he was not involved in the February 2018 sale and that Washington's testimony to that effect makes Kirley's statement evidence of another crime or of propensity to commit a crime. By Potter's lights, the District Court was therefore obligated to weigh the probative value of the statement against its prejudicial effect, which it did not do. At a minimum, he says, there should have been a limiting instruction telling the jury what it could and could not consider the evidence for, given the restrictions of Rule 404(b). Potter also argues that the government breached its duty to correct materially false testimony by letting Kirley's testimony stand, thus violating due process.

The fundamental problem for Potter in that entire line of argument is that Agent Kirley's testimony regards an act intrinsic to the charged conspiracy, not evidence of other acts. Following the objection, Kirley provided further context to his "[n]ot directly" statement, explaining how he witnessed Washington approach Patterson and – seemingly without any introduction or other comment – hand him drugs. (App. at 211.)

8

This supports an inference that Potter had communicated to Washington that he should sell cocaine to Patterson. The February 2018 interactions were thus used to directly prove the charged conspiracy and so constitute intrinsic evidence. *See Cross*, 308 F.3d at 320. To the extent Potter argues that Kirley's testimony is not intrinsic evidence because it contradicts Washington's testimony, contradictory evidence presents a weight-of-the-evidence question for the jury, not an admissibility question for the judge.[5] *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014).

The government also did not breach a duty to correct materially false testimony by letting the testimony stand because there is no indication that Kirley's testimony was false or that the government had reason to think it was. *See United States v. Stadtmauer*, 620 F.3d 238, 267 (3d Cir. 2010) (explaining that the defendant bears the burden of establishing "(1) [the witness] committed perjury; (2) the Government knew or should have known that [the witness] committed perjury but failed to correct his testimony; and (3) there is a reasonable likelihood that the false testimony could have affected the verdict").

Accordingly, we conclude that the District Court did not commit error, let alone plain error, in failing to sustain Potter's evidentiary objection.

---

[5] The point that Potter was behind the sale of cocaine to Patterson on that occasion, even if not the direct source, had already been alluded to earlier in the record. (*See* App. at 92 (The government: "Ultimately, were you able to physically get cocaine directly from Taurean Potter?" Agent Patterson: "No.").)

## B. Sufficiency of the Evidence

Potter also argues that the jury's guilty verdict was not supported by sufficient evidence. If a defendant has preserved a sufficiency-of-the-evidence challenge, we review the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Garner*, 915 F.3d 167, 169 (3d Cir. 2019) (internal quotation marks omitted) (citations omitted). That standard is "highly deferential," and we will uphold the jury verdict "as long as it passes the 'bare rationality' test." *United States v. Bailey*, 840 F.3d 99, 110 (3d Cir. 2016) (citation omitted). But the steep climb Potter faces, given that standard of review, is steeper still because he did not object to the sufficiency of the evidence at trial, so we again review his argument for plain error. *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005). He cannot make the climb. He has not shown that an error actually exists, so his argument fails at the first step of plain error review. It also necessarily fails at the second step, since it is not plain and obvious that the evidence was insufficient.

In a drug case, "[t]he elements of a charge of conspiracy are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (internal quotation marks omitted) (citation omitted). The government need not offer direct evidence of the conspiracy, nor must it prove that the "defendant knew all of the conspiracy's details, goals, or other participants." *Bailey*, 840 F.3d at 108 (citations omitted). Rather, "[w]e can infer such a conspiracy when evidence

10

of related facts and circumstances make clear that the defendant[ ] could not have carried out [his] activities except as the result of a preconceived scheme or common understanding." *Id.* (internal quotation marks omitted) (citations omitted).

A mere buyer-seller relationship "without any prior or contemporaneous understanding beyond the sales agreement itself" cannot alone establish the buyer and seller entered into a conspiracy. *Gibbs*, 190 F.3d at 197 (citations omitted). In *United States v. Pressler*, we held that no conspiracy had been proven where the defendant distributed heroin he had obtained from a supplier. 256 F.3d at 147. The defendant also referred some buyers to the supplier, and the supplier's many buyers often resold the heroin themselves. *Id.* We said, "the mere fact that a defendant comprehends that a person from whom he or she buys drugs or to whom he or she sells drugs also sells drugs to others is not itself sufficient proof that the defendant and the other person are conspirators." *Id.* at 153.

The focus of the analysis in *Pressler* was on the alleged agreement, because an agreement "is the essence of the offense" of conspiracy. *Id.* at 147. To prove that an agreement existed, "[t]he Government needed to show only that [the defendant] conspired with 'someone—anyone.'" *Id.* at 149 (quoting *United States v. Obialo*, 23 F.3d 69, 73 (3d Cir. 1994)). Although we decided that the government had not proven an agreement in *Pressler*, we held there was proof of an agreement in *United States v. Iglesias*, where the alleged co-conspirator had "purchased drugs from [the defendant] 'once or twice' … [and the defendant] gave [the co-conspirator] drugs on credit[.]" 535 F.3d 150, 156 (3d Cir. 2008). We noted that the defendant had invited the co-conspirator

to his apartment "with drugs in plain view[,]" which "reflect[ed] a level of mutual trust consistent with a conspiracy." *Id.* (citation omitted).  Given those facts, we concluded the defendant and his co-conspirator shared a common goal, the intent to achieve that goal, and an agreement to cooperate to achieve it through a credit arrangement.  *Id.*

Potter argues that the evidence introduced at trial in his case does not establish a shared unity of purpose between him and any co-conspirator.  Nor, he says, was there sufficient proof of an intent to achieve a common goal or of an agreement to work together toward that goal.  He instead says that the evidence suggests a mere buyer-seller relationship, in the nature of his relationship with Vitale.  Potter also emphasizes that Washington and Zito testified they did not work with him to distribute drugs.[6]

While Potter's argument is not without force – the proof of an agreement here is quite thin – he still fails to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, nor that it is plain and obvious that a rational juror would have to find him not guilty.  *See Olano*, 507 U.S. at 735-36; *Bailey*, 840 F.3d at 110.  Despite Potter's argument that the evidence fails to establish an underlying agreement, Agent Kirley's testimony that Washington approached Agent Patterson, without ever having met Patterson before, and began to give him cocaine is evidence of an agreement between Potter and Washington to supply Patterson with drugs.  That

---

[6] The parties also dispute the existence of several factors from *United States v. Gibbs*, which we held can demonstrate circumstantially that a defendant was part of a drug conspiracy.  190 F.3d at 199.  But the relevant evidence to take us past the bare rationality threshold here is the drug sale between Washington and Patterson, which implies a previous communication between Washington and Potter.

12

implication is supported by the evidence that Patterson, the CI, and Potter had just discussed Patterson's desire to purchase cocaine. A reasonable juror could infer that Potter told Washington that Patterson was a buyer and gave him Patterson's location with the intention that Washington would effect the sale. Construed in the light most favorable to the prosecution, a reasonable juror could give little or no weight to Washington's testimony that Potter was not involved and could instead accept Kirley's version of events suggesting a collaboration among Potter, Washington, and Main. Indeed, the jury could reasonably have accepted Kirley's version of events because of Washington's other testimony that he occasionally purchased cocaine from Main and Potter for resale when he was short on supply. A loose conspiracy is still a conspiracy.

Potter's circumstances are thus distinguishable from the facts in *Pressler*. The evidence here is sufficient, on plain error review, to establish more than a mere buyer-seller relationship existed, as a jury could rationally determine that Potter and Washington shared a common goal to sell cocaine, an intent to achieve that purpose by facilitating a sale, and an agreement to sell cocaine.

Although the totality of evidence here is weaker than the government should have presented, we cannot say on plain error review that no rational juror could have found Potter guilty of conspiracy to distribute cocaine. To summarize, Potter engaged in a discussion with Agent Patterson and the CI about purchasing cocaine, and, shortly thereafter, Patterson was approached by Washington, an apparent stranger, to hand him drugs for purchase. The jury could credit that seemingly spontaneous drug deal to Potter

13

working with Washington to sell cocaine, which provides circumstantial evidence sufficient in this case to support the finding of a conspiracy.[7]

Therefore, we conclude that Potter has failed to establish plain error.[8]

III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment of conviction.

---

[7] Judge McKee joins the opinion. He concludes that, although it might otherwise be as likely that the CI provided the details that Washington needed to sell Patterson drugs and not Potter, the jury could also consider Zito's prior inconsistent statement during her guilty plea colloquy in which she said that she had sold drugs for Potter. That statement is not hearsay pursuant to 801(d)(1)(A) as Zito was available for cross examination and it was given under oath during a court proceeding. The totality of this evidence is sufficient on plain error review to prevent us from finding that the conviction here does not meet the bare rationality test of *Bailey* even though it barely survives.

[8] Because of that, we need not evaluate whether the presence of an invalidated conspiracy count had any spill-over effect sufficiently prejudicial to reverse Potter's conviction for possession of cocaine with intent to distribute. *See United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010).

14