Kent A. SIEGFRIEDT, Petitioner,
Appellant,

v.

Michael FAIR, Respondent, Appellee.

No. 92–1731.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1992.

Decided Dec. 23, 1992.

Brownlow M. Speer, Boston, MA, with whom Committee for Public Counsel Services was on brief, for petitioner, appellant.

Pamela L. Hunt, Asst. Atty. Gen., Boston, MA, with whom Scott Harshbarger, Atty. Gen., Cambridge, MA, was on brief, for respondent, appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Petitioner-appellant Kent A. Siegfriedt seeks appellate review of an order of the United States District Court for the District of Massachusetts dismissing his application for habeas relief. *See* 28 U.S.C. § 2241–2254 (1988). The issue presented on appeal is nominal in the classic sense. We must determine whether the admission at trial of an unavailable witness's tape-recorded testimony, originally adduced at a probable cause hearing, violated the defendant's constitutional rights because the witness testified under a pseudonym. Finding no constitutional shortfall, we affirm.

## I.

### Background

Because the Massachusetts Supreme Judicial Court (SJC) has painstakingly traced the lay of the land, *see Commonwealth v. Siegfriedt*, 402 Mass. 424, 522 N.E.2d 970 (1988), it would be pleonastic to recount the facts in great detail. We provide instead only the bare minimum necessary to place the petitioner's appeal into workable perspective.

Siegfriedt was charged with arson. At the probable cause hearing, an individual known as Christopher Martel maintained under oath that Siegfriedt forewarned him of the fire and accurately predicted its approximate time of outbreak. After Martel withstood cross-examination at the hands of petitioner's counsel, the court found probable guilt.

By the time petitioner's case was reached for trial, Martel's whereabouts were a mystery. A diligent search failed to locate him but revealed a previously unknown fact: although the witness had gone by the name of Christopher Martel, his true name was Albert Ciccarelli, Jr. The presiding judge nevertheless admitted Martel/Ciccarelli's tape-recorded testimony, originally delivered at the probable cause hearing, into evidence at petitioner's trial.[1] Thereafter, the judge allowed petitioner to impeach the declarant's credibility. To that end, petitioner called two witnesses, including Martel/Ciccarelli's brother, who testified anent the declarant's parlous reputation for veracity.

The jury found Siegfriedt guilty. The SJC affirmed the conviction. Siegfriedt then sought habeas redress. The federal district court spurned his application but issued a certificate of probable cause under 28 U.S.C. § 2253. This appeal ensued.

## II.

### Standard of Review

■ Petitioner contends here, as he contended unsuccessfully below, that his constitutional rights were abridged when the state court admitted Martel/Ciccarelli's prior recorded testimony into evidence. This contention evokes a mixed question of law and fact. Under the presently prevailing standard, "mixed" constitutional questions are subject to plenary review in federal habeas proceedings. See Chakouian v. Moran, 975 F.2d 931, 934 (1st Cir.1992); see also Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir.) (affording de novo review to district court's decision concerning adequa-

cy of cross-examination in state criminal case), cert. denied, —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992). Hence, we scrutinize the denial of petitioner's application for habeas corpus without special deference either to the district court or to the state courts on the central issue raised by this appeal. Withal, we remain "bound by the [state] court's interpretation of [its] evidentiary law" so long as the record shows "a sufficient factual predicate rationally to support" that court's categorization of the contested evidentiary proffer. Puleio v. Vose, 830 F.2d 1197, 1204, 1207 (1st Cir.1987) (citations and internal quotation marks omitted), cert. denied, 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988).

## III.

### Analysis

#### A

■ The Confrontation Clause ensures a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This guarantee applies to the States through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965). While the guarantee restricts the circumstances under which a court may admit the statements of unavailable declarants into evidence, the restriction is not an absolute bar since the keen "societal interest in accurate factfinding" necessarily tempers the sweep of the Confrontation Clause. Bourjaily v. United States, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987). Thus, hearsay evidence from an unavailable declarant may survive exclusion if the proponent can demonstrate that the proffered evidence "bears adequate indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (internal quotation marks omitted). Such indicia can be established either by showing that the evidence "falls within a firmly rooted hear-

---

1. Siegfriedt's first trial resulted in a hung jury. We refer here, and below, only to the second trial, at which petitioner was found guilty.

say exception" or by showing that the evidence possesses "particularized guarantees of trustworthiness." *Id.; accord Idaho v. Wright,* 497 U.S. 805, 816–17, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990) (collecting cases).

■ Former testimony in the same case generally comes within a recognized hearsay exception if the declarant is unavailable and the party resisting the proffer has had a "complete and adequate opportunity to cross-examine." *California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970) (quoting *Pointer,* 380 U.S. at 407, 85 S.Ct. at 1069); *see also Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293 (1972); *United States v. Zannino,* 895 F.2d 1, 5–6 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *cf.* Fed. R.Evid. 804(b)(1). Here, the parties agree that the tape recording was generated in the same case and comprised the prior testimony of a declarant who was genuinely unavailable at the time of trial.[2] They disagree, however, about the adequacy of the opportunity for cross-examination.

The petitioner claims that, because Martel/Ciccarelli testified under an adopted name at the probable cause hearing, the opportunity for cross-examination was inadequate as a matter of law. This claim derives from the Supreme Court's opinion in *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). There, an informant in a drug-trafficking case testified at trial under an assumed name. When defense counsel attempted to ascertain the witness's true name and address, the trial judge sustained the prosecutor's objections. The Supreme Court vacated the ensuing conviction. In the Court's view, the trial judge's ruling impermissibly interfered with the defendant's right to confrontation because it foreclosed "the opportunity to place the witness in his proper setting and put … his credibility to a test." *Id.* at

132, 88 S.Ct. at 750 (citation and quotation marks omitted).

■ Petitioner interprets *Smith* as spawning a bright-line rule—a rule which mandates that, whatever nuances may be supplied by the surrounding circumstances, testimony given under an apocryphal name can never be admitted over objection in a criminal trial. But, this interpretation effectively ignores the Court's instruction that society's interest in accurate factfinding is to be regarded as an important factor in Confrontation Clause inquiries. *See Bourjaily,* 483 U.S. at 182, 107 S.Ct. at 2782. Accordingly, we decline to read *Smith* in the wooden fashion petitioner suggests.

Even before *Bourjaily* we held that *Smith*'s guiding principle, insofar as it concerns a witness's current address, "is not, like a rule of plane geometry, absolute." *McGrath v. Vinzant,* 528 F.2d 681, 684 (1st Cir.), *cert. dismissed,* 426 U.S. 902, 96 S.Ct. 2221, 48 L.Ed.2d 827 (1976). In our estimation, the *Smith* principle, insofar as it concerns a witness's true name, is likewise not absolute. *Accord United States v. Rangel,* 534 F.2d 147, 148 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976) (*Smith* "does not establish a rigid rule of disclosure [of a witness's name], but rather discusses disclosure against a background of factors") (citations and internal quotation marks omitted).

The long and short of it is that the *Smith* standard has a core purpose: to prevent a criminal conviction based on the testimony of a witness who remains "a mere shadow" in the defendant's mind. *McGrath,* 528 F.2d at 685. When that core purpose is not implicated, we see no reason for reflexively excluding otherwise admissible testimony. Certainly, *Smith* itself gives no indication that its guiding principle extends beyond the confines of its articulated rationale into such far-flung galaxies. *See Smith,* 390

---

2. The Court recently cast doubt upon the admissibility of prior testimony in criminal cases absent a concrete showing of the declarant's unavailability. *See White v. Illinois,* — U.S. —, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992) (suggesting, in dictum, that a showing of declarant's unavailability might be necessary to trigger the prior testimony exception to the hearsay rule because of the constitutional "preference for live testimony"). Given the witness's acknowledged unavailability in this case, we need not ponder the import of the *White* dictum.

U.S. at 132, 88 S.Ct. at 750 (explaining that the defendant must be accorded a fair opportunity to place an adverse witness in the witness's proper setting and to put his testimony and credibility to a meaningful test).

Against this backdrop, it is readily apparent that all pseudonyms are not equal in the eyes of the Confrontation Clause. Rather, courts must gauge the pull of *Smith* in any given case by the degree to which its rationale applies. Sometimes, as in *Smith* itself, a witness's use of a fictitious name will transform him into a wraith and thereby thwart the efficacy of cross-examination. Other times, the use of a fictitious name will be no more than a mere curiosity, possessing no constitutional significance.[3]

### B

■ The case at hand is at a substantial remove from *Smith*. In *Smith*, unlike here, the witness adopted a pseudonym for the sole purpose of testifying. In *Smith*, unlike here, the defendant did not know the witness's true identity before the jury returned its verdict. In *Smith*, unlike here, the witness's anonymity was the direct result of government contrivance. We find these distinctions more than sufficient to propel this case out of *Smith*'s precedential orbit.

1. In this situation, the name under which the witness testified (Christopher Martel) was not some passing cognominal fancy assumed solely for the purpose of the judicial proceeding and bearing no relation to the witness's life outside the courthouse. To the contrary, this was a name the witness had clasped to his bosom and made his own. He held himself out to the world as Christopher Martel; he was identifiable in Siegfriedt's community by that name; and he was known by that name at his own address—an address which he ac-curately recounted in the course of his testimony. Thus, Martel/Ciccarelli was not some incorporeal apparition—as was his ostensible counterpart in *Smith*—but a flesh-and-blood human being easily placed within his relevant context.

2. At the probable cause hearing, petitioner was able effectively to question the declarant qua Martel. Moreover, because petitioner discovered the witness's true name prior to trial, he was able effectively to investigate and impeach the declarant qua Ciccarelli. He took full advantage of both these opportunities, in the first instance through lengthy cross-examination and in the latter instance by calling witnesses to debunk the declarant's reputation for truthfulness. The goals of *Smith*'s guiding principle—placing the witness in his proper setting and putting his credibility to a fair test—were satisfied. *See generally United States v. McLaughlin,* 957 F.2d 12, 17 (1st Cir.1992) (explaining that the main purposes of cross-examination are to impeach credibility and to expose a witness's biases and possible motives for testifying) (collecting cases); *see also Clark v. Ricketts,* 958 F.2d 851, 855 (9th Cir.1991) (discerning no Confrontation Clause violation despite informant's refusal to reveal his name while testifying; defendant knew the witness's name before trial and, therefore, had an opportunity to conduct both an out-of-court investigation and an in-court examination), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1992).

3. In *Smith*, the defense failed to learn the witness's true name and address because government actors—the prosecutor and the judge—combined to block its access to the witness, thereby restricting the scope of cross-examination. Here, however, there is no suggestion that the State knew of Martel/Ciccarelli's hidden identity at the time of the preliminary hearing or that the presiding judge sustained objec-

---

3. Petitioner's insistence upon a bright-line rule, slavishly followed, could produce a bizarre anomaly. One can easily envision circumstances in which a witness testifying under his birth name might present a much more spectral figure than if he or she testified under an adopted name. For example, the appellations Issur Danielovitch Demsky, Betty Joan Perske, and Marion Michael Morrison will probably be of less assistance in placing the affected individuals in their proper settings than their screen names (Kirk Douglas, Lauren Bacall, and John Wayne, respectively).

tions or otherwise imposed any *Smith*-related scope restriction on cross-examination. That the cross-examination conducted by petitioner's attorney failed to reveal Martel/Ciccarelli's birth name was not in any way attributable to official conduct.

■We believe that this distinction is significant because "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam). This precept applies even when the witness himself is unequivocally to blame for the relative ineffectiveness of the cross-examination. *See id.* at 19, 106 S.Ct. at 294 (discussing a situation where a witness's memory lapse prevented him from answering potentially discrediting questions). We do not think this precept diminishes in vitality simply because the defense's opportunity to cross-examine the declarant arises at a preliminary hearing. *See, e.g., Roberts*, 448 U.S. at 73 n. 12, 100 S.Ct. at 2543 n. 12 (indicating that, under such circumstances, "no inquiry into 'effectiveness' is [ordinarily] required").[4] Because petitioner questions the effectiveness of the cross-examination rather than an undue, State-imposed limitation on its scope, he is hard pressed to contend that *Smith* requires a reversal here.

4. When this case is judged by the totality-of-the-circumstances test that proper application of the *Smith* principle requires, it readily passes constitutional muster.[5] We hold, therefore, that Martel/Ciccarelli's use of an alias at the probable cause hearing did not, without more, render that testimony inadmissible at a later proceeding in the same case.

### C

■ Once the *Smith* hurdle is cleared, this case unquestionably meets the *Roberts* criteria. Apart from Martel/Ciccarelli's unique brand of name-dropping, there is no basis for any suggestion that the defense's opportunity for cross-examination was incomplete or inadequate. The witness testified under oath, before a judge, and in the same case. A verbatim record of the proceedings was contemporaneously made. The defendant was represented by counsel. His attorney was permitted to cross-examine without undue restriction. Under these circumstances, we find that the state court appropriately classified the tape recording within the hearsay exception for prior testimony of an unavailable declarant. *See Green*, 399 U.S. at 165–66, 90 S.Ct. at 1938–39.

### IV.

#### *Conclusion*

■ We need go no further. With Juliet we ask "What's in a name?" and with her we conclude "[t]hat which we call a rose by any other name would smell as sweet." W. Shakespeare, *Romeo and Juliet*, Act II, Sc. ii. Though the State's witness had one legal name, he was not made a phantom to the defense merely because he testified at the preliminary hearing under a name he had assumed some time previously. The complete and adequate opportunity for cross-examination which prevailed at the first hearing, the defense's subsequent opportunity, once armed with knowledge of the witness's birth name, to put his credibility to the test at trial, and the utter absence of State action limiting the scope of the defense's cross-questioning, combine to bring the earlier testimony well within a firmly rooted

---

4. The *Roberts* Court indicated that an exception might lie for extraordinary cases in which defense counsel provided ineffective assistance at the earlier hearing. *See Roberts*, 448 U.S. at 73 n. 12, 100 S.Ct. at 2543 n. 12. In the case at hand, however, appellant has advanced no such claim.

5. Although we deem the three main points of divergence between this case and *Smith, see* text *supra*, to be important, we emphasize that *Smith* must be applied in a case-specific fashion, having in mind the entire array of circumstances that attend the testimonial proffer in any given situation. We do not, therefore, assign decretory significance to any single distinguishing factor.

hearsay exception.[6] The Confrontation Clause was satisfied in petitioner's case. *See generally Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990) (discussing the need for "rigorous testing [of a witness] in the context of an adversary proceeding" in order to satisfy the imperatives of the Sixth Amendment).

*Affirmed.*

---

6. We note in passing that, even apart from whether this evidence fell within a firmly rooted hearsay exception, the Confrontation Clause would be satisfied so long as the totality of the circumstances evinced the requisite guarantees of trustworthiness. *See Wright,* 497 U.S. at 818–19, 110 S.Ct. at 3148 (describing test; collecting cases). Although we do not decide the case on this ground, we remark the obvious: a strong argument for admissibility can be made on this basis, particularly since Martel/Ciccarelli appeared at the probable cause hearing without the protection of immunity and spoke about matters within his personal knowledge. These latter two points are important considerations in a trustworthiness inquiry. *See Zannino,* 895 F.2d at 7.