UNITED STATES of America

v.

**Alfredo FUENTES, et al.**

No. CRIM. 97–201.

United States District Court,
E.D. Pennsylvania.

Oct. 31, 1997.

As Amended Dec. 4, 1997.

Anita Eve, Thomas Eichen, Asst. U.S. Attys., Philadelphia, PA, for the Government.

Peter Raben, Coconut Grove, FL, for Maria Sanchez.

Jeremy H. Gonzalez Ibrahim, Philadelphia, PA, for Jorge Ayala.

Guillermo L. Bosch, Collegeville, PA, for Alvaro Cordova Siliezar.

### *MEMORANDUM*

DALZELL, District Judge.

The Government has moved for us to reconsider our Order of October 28, 1997, requiring it to disclose the identity of the confidential informant the Government seeks to call as an important witness at the trial scheduled to begin next week. As will be seen, this problem of informant disclosure

involves the collision of powerful and legitimate interests on both sides.

## I. *Factual Background and Procedural Posture*

This case arises out of an undercover Drug Enforcement Agency (D.E.A.) operation in which the confidential informant, posing as Juan Jose Lozano,[1] allegedly brokered the sale of 300 kilograms of cocaine from defendants Alfredo Fuentes and Edgar Quintero to an undercover D.E.A. agent, Ralph Padilla. The investigation involved the tape recording of many conversations between Messrs. Lozano, Fuentes and Quintero, during which Lozano arranged the sale of the cocaine. The operation culminated in a April 2, 1997 meeting at the Marriott Hotel in Miami, Florida where, on Fuentes' and Quintero's behalf, defendants Maria Sanchez, Jorge Ayala and Alvaro Cordova–Siliezar were to complete the sale to Padilla by exchanging the cocaine for the money.[2] Sanchez, Ayala and Cordova–Siliezar were arrested at the Miami Marriott on April 2, 1997 and are charged, along with Fuentes and Quintero, with conspiring to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846.[3]

At trial, the Government intends to present forty-four tape recordings of conversations between and among Lozano and Fuentes and Quintero to establish the conspiracy. Some time ago, the Government asked that we allow Lozano to testify under his pseudonym and not disclose his true identity to defendants and their counsel. The defendants, in turn, moved for the disclosure of Lozano's true identity. For the reasons that follow, after two hearings on this matter we granted the defense motion on October 28, 1997 and ordered the Government to disclose Lozano's true identity. We also held that Lozano could testify at trial using a pseudonym, and strictly limited dissemination of his true identity.[4]

The Government has elected not to disclose Lozano's true identity, and instead filed a motion for reconsideration asking us to vacate our October 28th Order. In the alternative, the Government contends that the appropriate remedy for non-disclosure is suppression of Lozano's testimony rather than dismissal of the action.[5]

## II. *Disclosure of Lozano's True Identity, Use of Pseudonym and the Confrontation Clause*

The Government contends that use of the pseudonym and preserving Lozano's anonymity is necessary to protect him and his family and to preserve the integrity of other ongoing drug trafficking investigations. Defendants argue that failing to provide Lozano's true identity and allowing him to testify under a pseudonym would violate their confrontation rights under the Sixth Amendment to the Constitution.[6]

1. Although "Juan Jose Lozano" is not the confidential informant's true name, we will refer to him as Lozano throughout this Memorandum.

2. Because of a dispute between and among the parties to the transaction, they reduced the amount of cocaine to 200 kilograms.

3. Defendants Fuentes and Quintero are fugitives suspected to be residing in Colombia and Venezuela, respectively. The Government elected to proceed against Sanchez, Ayala and Cordova–Siliezar without Fuentes and Quintero.

4. We held that defense counsel could reveal the identity to their clients and to one investigator who would work on behalf of all defendants. In addition, we ordered that the investigator and the defendants reveal Lozano's true name only as required by the investigation and warned that failure to comply with this Order would result in contempt of court.

5. The Government contends that our Order suppressing Lozano's testimony is an appealable Order under 18 U.S.C. § 3731, and it represents that it intends to seek expedited review with our Court of Appeals. Defendants contend that such an order is not appealable, although they have intimated that dismissal of the indictment may be warranted here if the Government fails to comply with our directive. We take no view on the issue of appealability, but, assuming that the Court of Appeals has appellate jurisdiction, we agree with the Government that interlocutory review of this difficult matter is warranted on an expedited basis in view of the two defendants' pretrial detention.

6. The Sixth Amendment to the Constitution provides that, "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

Various law enforcement agencies have employed Lozano as an undercover narcotics informant for the past seventeen years. It appears undisputed that in 1979, while a pilot in his native Colombia, a drug dealer asked Lozano to transport cocaine to the United States in his airplane. After Lozano refused, the drug dealer used another plane to transport the narcotics that the United States Government seized. The drug dealer reportedly blamed Lozano for the seizure and murdered Lozano's twelve-year-old nephew in retaliation. Shortly thereafter, Lozano called the United States embassy and has been working for various law enforcement agencies ever since.

During this time, Lozano has worked as a confidential informant on many drug cases involving the Colombian drug trade. Although Lozano and his immediate family reside in the United States, he is said to be from a prominent family in Colombia and many of his relatives still reside in that country. During the course of his employment, the Government contends that Lozano has been shot three times and threatened on other occasions. In addition, few would quibble with the reality of the well-documented climate of fear and intimidation in Colombia that the powerful drug cartels have created.

We are persuaded, therefore, that disclosure of Lozano's identity would likely place him and his innocent family members in serious danger. We are also convinced, based upon the representations of the Government, that revealing Lozano's identity could compromise ongoing D.E.A. investigations. We are therefore resolved to do everything in our power to protect Lozano's identity consistent with defendants' Confrontation Clause rights.

The right of confrontation and cross-examination is an "essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968) (quoting *Pointer v.*

*Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)); *see also United States v. Riggi,* 951 F.2d 1368, 1375 (3d Cir.1991). Cross-examination is particularly vital because it "is the principal means by which the trustworthiness of a witness is tested." *Riggi,* 951 F.2d at 1376 (citing *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). "So essential is cross-examination ... that the absence of proper confrontation 'calls into question the ultimate integrity of the fact-finding process.' " *Riggi,* 951 F.2d at 1376 (quoting *Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980)).[7]

Defendants contend that allowing Lozano to testify under a pseudonym without disclosing his true name to them would violate their confrontation rights. In support of their argument defendants rely on *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), where the Supreme Court held that allowing a witness to testify under a pseudonym without revealing his identity or place of residence to the defense violated the defendant's fundamental right to confront witnesses against him.

The Court in *Smith,* speaking through Justice Stewart, used unqualifiedly broad terms when it stated that:

> [T]he very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131, 88 S.Ct. at 750 (citing *Pointer,* 380 U.S. at 404, 85 S.Ct. at 1068). The breadth of this language is thrown into unusually bold relief by the revelation in Justice Harlan's dissent that both the defendant and defense counsel admitted to actually knowing the witness—indeed, defense counsel at one time

---

7. In *Riggi,* our Court of Appeals held that a blanket rule that prohibited recross-examination violated defendants' Sixth Amendment confrontation rights. 951 F.2d at 1378. While *Riggi* stresses the importance of the general right to confrontation, neither we nor the parties have found any cases from the Third Circuit that provided guidance on the particulars of the issue now before us.

represented him. *Smith,* 390 U.S. at 135, 88 S.Ct. at 751–52 (Harlan, J. dissenting).[8] Here, defense counsel and defendants represent that they do not in fact know Lozano's true identity.[9]

After an exhaustive search, we believe that the most comprehensive and instructive analysis of *Smith* is the First Circuit's analysis in *Siegfriedt v. Fair,* 982 F.2d 14 (1st Cir.1992). In *Siegfriedt,* the First Circuit affirmed the dismissal of a petition for habeas corpus that contended that a witness' use of a pseudonym violated the petitioner's Confrontation Clause rights. In applying *Smith* to these facts, Judge Selya for the First Circuit panel wrote:

> The long and short of it is that the *Smith* standard has a core purpose: to prevent a criminal conviction based on the testimony of a witness who remains a mere shadow in the defendant's mind....
>
> Against this backdrop, it is readily apparent that all pseudonyms are not equal in the eyes of the Confrontation Clause. Rather, courts must gauge the pull of *Smith* in any given case by the degree to which its rationale applies. Sometimes, as in *Smith* itself, a witness's use of a fictitious name will transform him into a wraith and thereby thwart the efficacy of cross-examination. Other times, the use of a fictitious name will be no more than a mere curiosity, possessing no constitutional significance.

*Siegfriedt,* 982 F.2d at 18 (citations omitted). *Siegfriedt* thus contemplates a case-specific analysis which takes into account the array of factual circumstances and weighs the degree to which use of a pseudonym implicates *Smith* 's guiding principles of placing the witness in the proper context and putting his credibility to a fair test. *Id.* at 19 & n. 5. In *Siegfriedt* itself, *Smith* 's principles were implicated only negligibly because the defense knew the actual name of the witness, performed an investigation and presented impeachment evidence.[10] The Court thus held that the witness' use of a pseudonym had no constitutional significance.[11]

■ The core principles of *Smith,* however, are directly and profoundly implicated by the Government's proposal not to disclose Lozano's true identity and allow

---

**8.** The defendant himself stated on direct examination that he had known the witness for "a few years or so, casually." *Smith,* 390 U.S. at 135, 88 S.Ct. at 751–52 (Harlan, J. dissenting).

**9.** Defendants contend that *Smith* is a bright-line rule forbidding confidential informant testimony by pseudonym. We disagree and in so doing adopt the rationale of the First Circuit in *Siegfriedt v. Fair,* 982 F.2d 14 (1st Cir.1992), where it held that interpreting *Smith* as a bright-line rule "effectively ignores that society's interests in accurate factfinding is to be regarded as an important factor in Confrontation Clause inquiries." 982 F.2d at 17 (citing *Bourjaily v. United States,* 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987)).

**10.** *See also Clark v. Ricketts,* 958 F.2d 851, 855 (9th Cir.1991) (discerning no Confrontation Clause violation despite informant's refusal to reveal his name while testifying; defendant knew the witness' name before testifying and, therefore, had an opportunity to conduct both an out-of-court investigation and in-court examination); *United States v. Jacobson,* 785 F.Supp. 563, 568–69 (E.D.Va.1992) (holding that use of pseudonym by parents of artificially inseminated children while testifying to protect them from embarrassment did not violate defendant's Confrontation Clause rights because defendant knew the parents' true names and use of pseudonym would

interfere with preparation for trial or cross-examination).

**11.** *Siegfriedt* also distinguished *Smith* in two other ways. First, in *Smith* the witness adopted the pseudonym for the purposes of the proceeding, but the witness in *Siegfriedt* used the pseudonym in his everyday life and was identifiable in the community and his home address by that name. Lozano's use of the pseudonym is somewhere between the witnesses' use of the pseudonym in *Smith* and *Siegfriedt* because Lozano adopted this name for undercover operations and not just for the judicial proceeding. Thus, for sixteen of his forty-six years Lozano has been known in the United States, at least in his D.E.A. capacity, as Lozano. Defense counsel, however, will still not be able to investigate Lozano's background for more than half his life, as could the defense in *Siegfriedt.* Second, in *Smith* the defense failed to learn the witness' true name and address because the official actors—the prosecutor and the judge—would not allow the disclosure of that information. In *Siegfriedt,* however, the Commonwealth of Massachusetts did not know about the witness' true identity, and the failure of the prosecution to reveal the witness' birth name was not attributable to the Commonwealth. Here, it would be the Government actors who would restrict defendants' access to the witness' true identity.

him to testify using his pseudonym. Their proposal forecloses any possibility of defendants' meaningful investigation into Lozano's background, and it requires the defendants to rely exclusively on the Government for information about Lozano. It also leaves the defense with no way of testing the veracity or completeness of the Government's disclosures. This complete reliance on the prosecution is, in our view, inimical to our adversary process and to the checks on government prosecution embedded in our constitutional framework. This complete reliance also implicates one of *Smith*'s guiding principles, *i.e.*, that the Confrontation Clause requires that the defendants have the opportunity to put the witness' credibility to a fair test. The Government's refusal to disclose the identity of the witness effectively forecloses that opportunity.

The Government, at our urging, attempted to assuage the defendants' confrontation concerns by providing extensive disclosures concerning Lozano. The disclosures include the transcripts of four of the five federal cases in which Lozano has testified.[12] The Government also provided defense counsel with a redacted version of Lozano's National Crime Information Center report ("NCIC"),[13] a similar report of his Colombian criminal record, and a listing of payments the D.E.A. has made to Lozano over the years. From these disclosures we have gleaned the following information about Lozano:

1. He was born in Barranquilla, Colombia in the Medellin province of Colombia and is about 46 years old;

2. In Colombia, he was an airplane pilot and at one time owned ten planes which he chartered (he was also involved in various other businesses);

3. He came to the United States in 1981;

4. Prior to immigrating here, he was involved in the transportation of drugs, *i.e.*, drug dealers paid him to fly marijuana from Colombia to the Bahamas many times over a period of several years;

5. He has no criminal record either in the United States or in Colombia, nor has he been arrested or the subject of any criminal investigation;

6. The D.E.A. has paid him $345,000 over the past seventeen years for his assistance in over 100 cases, and the D.E.A. was his only source of income as of June, 1997;

7. He failed to pay at least a portion of the taxes due on the amounts he was paid and may have never filed a tax return, and he is currently working with the Internal Revenue Service to resolve his tax problems (although he has had tax troubles since at least 1988); and

8. The D.E.A. intervened with the Immigration and Naturalization Service on Lozano's behalf to help him get his initial visa and obtain many extensions on that visa, as well as helped him secure his permanent visa.

The Government contends that this information is a sufficient surrogate to revealing the identity of the informant, and that it provides the basis for meaningful cross-examination consistent with the Confrontation Clause. We disagree. While these disclosures certainly assist the defense because they provide impeachment evidence, the failure to reveal Lozano's true name still

---

**12.** The Government has made a good faith effort to locate the fifth transcript. Counsel for the Government contacted the Assistant United States Attorney in Dayton, Ohio who prosecuted the matter more than five years ago. The Assistant was unable to locate a transcript and the court reporter is deceased, and when the case was appealed, the Sixth Circuit only received part of the transcript which did not include the testimony of Lozano. The Government is not optimistic that it will be able to produce that transcript.

In all four cases in which the Government provided a transcript, Lozano testified without

revealing his true identity. Notably, in one of the cases it turns out that the Government revealed the true identity of Lozano to defense counsel. *See United States v. Julio Castro–Vega*, No. 88–cr–797, transcript from 9/13/89, p. 244B (S.D.N.Y.1989). None of the cases resulted in a published or even unpublished opinion of which the Court or the Government is aware. We are told that this very issue is on appeal in *United States v. Lovelace*, Crim. No. 96–168 (E.D.Wis. 1997).

**13.** The Government represents that the NCIC report redacted only Lozano's true name and date of birth.

forecloses "countless avenues of in-court examination and out-of-court investigation." *Smith*, 390 U.S. at 131, 88 S.Ct. at 750. These disclosures also do not alter the Government's sole control over the informational flow and the defendants' inability to test the veracity or completeness of the Government's disclosures. Furthermore, the defense also has no way of testing Lozano's reputation for truthfulness (or lack thereof) in his community. *See* Fed.R.Evid. 608. Also foreclosed is the defendants' ability to investigate possible prior bad acts here and in Colombia which would impugn his veracity. *See id.* In sum, even with these disclosures Lozano remains only who the Government says he is, and as for his life of at least thirty years before 1981, he remains largely a phantom.

In its motion for reconsideration, the Government, while conceding that there are no appellate cases directly supporting its position, refer us to some decisions that it believes support its view that allowing Lozano to testify using a pseudonym without disclosing his name complies with defendants' Confrontation Clause rights. The Government cites *United States v. Fenech*, 943 F.Supp. 480 (E.D.Pa.1996), and the cases cited therein. In *Fenech*, the Government's key informant witness testified using a pseudonym to protect his identity for safety reasons. Judge Padova granted defendant's motion for a new trial because, as the Government conceded, "the record contain[ed] nothing to suggest that the witness had been threatened and [was] void of any indication that the witness was in danger." 943 F.Supp. at 488. Judge Padova stated, however, that a well-recognized exception to *Smith* exists where revealing a witnesses "name, address, or place of employment ... would place the witness in danger." *Id.*

In support of this proposition, the Court in *Fenech* cited eight cases that, as will be seen, provide little support for the broad proposition quoted. In seven of the cases the Court held that witnesses who testified must disclose their actual names but were not required to divulge their current addresses and/or places of employment in open court because disclosure might endanger their personal safety.[14] We agree that where a witness is threatened or is in any other way in danger, the Confrontation Clause does not require disclosure in open court of the witness' address or current place of employment. Withholding this information does not impede the defendant's out-of-court investigation in any material way or foreclose possible avenues of in-court examination. Withholding one's address and current place of employment, however, is simply not comparable to withholding one's true identity. As discussed above, concealing one's actual identity forecloses defendant from properly investigating the witness' background, reputation for truthfulness, and any prior bad acts that would impugn the witness' character, as well as prevents the testing of the completeness of the Government's disclosure. We therefore find that the seven cases cited in *Fenech* are not instructive here.

We also do not find illuminating the eighth case cited in *Fenech, United States v. Ellis*, 468 F.2d 638 (9th Cir.1972). In *Ellis*, the Ninth Circuit affirmed a conviction where the district court refused to allow defendant to elicit a witness' correct name, residence and occupation because of the potential harm to the witness. The Court held that because "of the marginal significance of the witness's testimony ... no prejudice to the defendant can be shown." *Id. Ellis* is not helpful here because of the conceded materiality of Lozano's testimony. It was Lozano who brokered the sale of the cocaine and tape recorded the conversations. His testimony will authenticate most of the tapes, and it will also provide the basis for the conspiracy charge.

In addition, Lozano's testimony is particularly vital because of the proposed defense in this case. At least defendants Ayala and Sanchez, and possibly Cordova–Siliezar, intend to argue that they never intended to sell drugs but that the transaction was an at-

---

**14.** *See Caldwell v. Minnesota*, 536 F.2d 272, 273 (8th Cir.1976), *McGrath v. Vinzant*, 528 F.2d 681, 684–86 (1st Cir.1976), *United States v. Cosby*, 500 F.2d 405, 407 (9th Cir.1974), *United States v. Alston*, 460 F.2d 48, 52 (5th Cir.1972); *United States v. Persico*, 425 F.2d 1375, 1383 (2d Cir. 1970); *United States v. Baker*, 419 F.2d 83, 87 (2d Cir.1969); *United States v. Palermo*, 410 F.2d 468, 472–73 (7th Cir.1969).

tempt to steal $2.6 million from Padilla.[15] Lozano's testimony is critical because presumably he will provide testimony refuting that defense. The analysis in *Ellis* thus does not aid us. *See United States v. Barnes*, 486 F.2d 776, 779–81 (8th Cir.1973)(holding that disclosure of informant's identity required where informant is a key witness whose testimony would be significant in determining guilt or innocence, even where the Government did not intend to call the informant as a witness); *United States v. Barnett*, 418 F.2d 309, 311–12 (6th Cir.1969)(same); *United States v. Roberts*, 388 F.2d 646, 648–50 (2d Cir.1968)(holding that where informant's testimony is essential to fair determination, disclosure of informant's identity is required even where the Government will not call informant as a witness).

■ The Government also argues in its motion for reconsideration that *Smith* does not apply here because defendants are making a pretrial request which it contends does not implicate the Sixth Amendment. We again disagree. The Government proposes to proceed to trial next week in a manner that we view as violative of defendants' Confrontation Clause rights. Nothing in the Sixth Amendment itself or any of the cases the Government cites leads us to believe that we may not take prophylactic action, but must instead wait until defendants' constitutional rights have actually been violated before acting.

■ We do not believe, however, that the Confrontation Clause requires that Lozano reveal his true identity in open court. Revealing Lozano's true identity to the defendants permits them to investigate his background, and not permitting use of his true name during trial has in our view no constitutional significance. *See supra* note 10.

The Confrontation Clause also does not prevent us from strictly limiting the dissemination of Lozano's true identity. Defense counsel may, of course, reveal Lozano's identity to their clients. They may also reveal

the identity to one investigator who will labor on behalf of all the defendants in investigating Lozano's background. The defendants and the investigator, however, are to reveal this information only as required by the investigation. We warned defendants and defense counsel that failure to comply with these limitations would result in a contempt of court charge.

### III. *Remedy for Failure to Comply*

■ The Government has advised us in its motion that it will refuse to comply with our October 28, 1997 Order requiring it to reveal the true identity of Lozano. We are therefore constrained to order the suppression of his testimony. In view of the Government's refusal, Lozano may not testify for the Government at trial. *United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir.1992) (finding that trial court properly excluded evidence the prosecution improperly failed to disclose).

An Order accompanying this Memorandum follows.[16]

### *ORDER*

AND NOW, this 31st day of October, 1997, upon consideration of the Government's motion for reconsideration of the Court's Order of October 28, 1997 requiring the Government to disclose the identity of its confidential informant (the "October 28 Order"), and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the Government's motion is GRANTED IN PART and DENIED IN PART in that:

1. The Government's request to vacate the October 28 Order is DENIED; and

2. The Government's request for the remedy of suppression of the testimony of "Juan Jose Lozano," rather than dismissal of the indictment, is GRANTED.

---

15. The failure of the Government to find any drugs buttresses this defense.

16. Although the Government in fact took an appeal of our October 31, 1997 Order herein, on December 2, 1997 the Court of Appeals, in accor-

dance with the agreement of the parties, dismissed the appeal pursuant to Fed. R.App. P. 42(b). *United States of America v. Fuentes, et al.*, No. 97–1878 (3d Cir., Dec. 2, 1997).