[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10858
Non-Argument Calendar

_____

D. C. Docket No. 06-00072-CR-J-25-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDEL JORGE MASO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 26, 2007)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Edel Jorge Maso appeals his conviction for possession with intent to distribute and aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1) and 18 U.S.C. § 2. Specifically, Maso argues that the district court (1) violated his Sixth Amendment right to a public trial by holding an in camera hearing to determine if a principal government witness could testify using a pseudonym and ultimately allowing the witness to do so; and (2) violated his Sixth Amendment right to confront witnesses by allowing the principal government witness to testify using a pseudonym. For the reasons discussed below, we affirm.

Before Maso's trial, the government submitted a motion to allow the confidential witness ("CW") to testify using a pseudonym. The government explained that the CW was a professional undercover informant for the Drug Enforcement Agency ("DEA") and had been threatened in the past in connection with his work as a DEA informant. The government indicated that it had informed Maso of the CW's real name. The government argued that public disclosure, however, of the CW's real name would endanger the CW and his family and would compromise ongoing DEA investigations. Maso objected to the government's motion, suggesting that the use of a pseudonym would violate his right to confrontation and the public's interest in an open trial. The district court indicated

2

that it would hold an <u>in camera</u> hearing to determine if revealing the CW's real name in open court posed an unreasonable risk. Maso objected to holding the hearing <u>in camera</u>. The district court overruled this objection and excluded everyone from the courtroom save those involved in the trial.

At the <u>in camera</u> hearing, the CW testified as follows. He had worked as a CW for the DEA for 6 years and in 30 investigations, some of which led to prosecutions and some of which were ongoing. Approximately one month before the hearing, someone approached the CW's father and warned that the CW should "watch [his] back" and that the CW's family might "get hurt." Also, approximately three of four months before the hearing, someone approached the CW's father-in-law and other family members at a family reunion in Washington state and offered money for a picture and/or the location of the CW. Furthermore, a couple of years before the hearing, in another state, someone hired a hit man to find and kill the CW. This threat on his life led the DEA to relocate the CW. The CW also had been relocated one other time since then. On cross-examination, the CW admitted that his father was in Mexico at the time that the threat was communicated and that the threat did not stem from the instant case but from a case out of Washington state. The district court granted the government's motion, instructed the parties to refer to the CW as "Jack Menendez," and forbade any

cross-examination into his true identity. Accordingly, the CW testified as "Jack Menendez."[1]

Specifically, the CW testified as follows. Under the supervision of the DEA, he arranged to meet one of Maso's codefendants in a Florida store parking lot to purchase cocaine. After the CW arrived at the parking lot and showed the codefendant that he had the requisite money, the codefendant called two of his acquaintances to deliver the cocaine to the store parking lot. Maso was one of these acquaintances. Maso drove the car in which the acquaintances arrived. Maso also asked the CW if he had the requisite money and asked the codefendant if Maso should count the money in his car before handing over the cocaine. The other acquaintance carried the cocaine on his person. On cross-examination, the CW admitted that he was paid for his work in the investigation of Maso. The CW also admitted that he did not become a CW for the DEA until after he was arrested for possessing half a pound of methamphetamine and that his charge from that arrest was dismissed in exchange for his cooperation. The CW further admitted that the portion of the conversation in which Maso asked if he should count the CW's money in Maso's truck was not recorded because of an apparent malfunction with his equipment.

_____

[1] Per Maso's request, the district court did not inform the jury that the CW was testifying using a pseudonym.

## I. Right to a Public Trial

A violation of the right to a public trial constitutes structural error, or a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Judd v. Haley, 250 F.3d 1308, 1314-1315 (11th Cir. 2001). Therefore, such a violation is not subject to a harmless error analysis. Id. Rather, "once a petitioner demonstrates a violation of his Sixth Amendment right to a public trial, he need not show that the violation prejudiced him in any way. The mere demonstration that his right to a public trial was violated entitles a petitioner to relief." Id.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ." U.S. Const. amend. VI.[2] The Supreme Court has held, however, that "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). The Supreme Court cautioned that "[s]uch circumstances will

---

[2] The government has argued that the right to a public trial does not extend to the in camera hearing in question or the use of a pseudonym. The government argues that the in camera hearing was analogous to a bench conference, to which the right normally does not extend, and merely covered a matter collateral to the ultimate issue of Maso's guilt. The government argues that the use of a pseudonym did not constitute a closure, as no one was excluded from the courtroom. We do not need to resolve these issues for purposes of the instant appeal.

be rare, however, and the balance of interests must be struck with special care." Id. Indeed, in Waller, the Supreme Court established the following test to govern courtroom closures:

> The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Waller, 467 U.S. at 48, 104 S.Ct. at 2216.

The district court did not violate Maso's right to a public trial by conducting an in camera, rather than open, hearing or allowing the CW to testify using a pseudonym. See U.S. Const. amend. VI. Regarding the in camera hearing, the circumstances surrounding the closure satisfied the Waller test. See Waller, 467 U.S. at 48, 104 S.Ct. at 2216. Specifically, the CW advanced an interest that was more important than Maso's interest in an open hearing, namely his and his family's safety and his role in ongoing DEA investigations. To this end, the CW testified that, within the year before Maso's trial, someone had communicated threats on the CW and his family to the CW's father and had offered to pay the CW's family money in exchange for information on his then-current identity and whereabouts. Maso also testified that he was involved in ongoing DEA investigations. The CW's interest in protecting himself and his family and his role

6

in ongoing DEA investigations would be prejudiced if the evidentiary hearing were open, in that a public record would be made offering clues as to his real identity. Also, closing the evidentiary hearing was the least restrictive method to protecting the CW's interests. Finally, the arguments and discussions both before and during the closed hearing provided adequate information for appellate review, as they provided sufficient information about the CW's fears for his and his family's safety and interest in maintaining secrecy as a CW.

Regarding the use of a pseudonym, the circumstances surrounding the closure also satisfied the Waller test. See id. Specifically, the CW testified to an overriding interest in not revealing his true name to the public, as discussed above. The CW's interest in protecting himself and his family and his role in ongoing DEA investigations would be prejudiced if his name, evidence of his continuing role as a CW for the DEA, and whereabouts were made a public record. Also, allowing the CW to use a pseudonym was the least restrictive method to protecting the CW's interests. Finally, as discussed above, the record provided adequate findings for appellate review. Accordingly, as both of the closures satisfied the Waller test for justifying a courtroom closure, the district court did not violate Maso's right to a public trial in conducting an in camera hearing and allowing the CW to testify using a pseudonym. Therefore, we affirm Maso's conviction as to

this issue.

## II. Right to Confront Witnesses

We review a district court's restriction of a defendant's right to confront witnesses for abuse of discretion. See Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). We will not, however, review the violation for harmless error. See Smith v. State of Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968). Rather, "(a) denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Id.

The Sixth Amendment Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It is axiomatic that the Confrontation Clause affords a defendant the right to cross examine witnesses. See Pointer v. Texas, 380 U.S. 400, 400-01, 85 S.Ct. 1065, 1066, 13 L.Ed.2d 923 (1965). Moreover, the Supreme Court has held that the Confrontation Clause protects a defendant from restrictions on the scope of his cross-examination, specifically regarding the witness's identity. Smith, 390 U.S. at 130-33, 88 S.Ct. at 749-51.[3]

---

[3] In Smith, the principal witness against the defendant testified using a pseudonym. 390 U.S. at 130, 88 S.Ct. at 749. Although defense counsel previously had represented the witness,

The issue presented by the instant case, namely whether the Confrontation Clause was violated when the government revealed the principal witness's real name to the defendant in advance of trial but the witness refused to divulge his identity in open court, is a matter of first impression to this Court. We note, however, that our predecessor has considered an analogous situation and that certain of our sister circuits have considered the exact situation.

In United States v. Alston, 460 F.2d 48, 51-52 (5th Cir. 1972), our predecessor considered a case in which the principal witness against the defendant refused to divulge his home address, citing concerns for his and his family's safety. Our predecessor held that there was no "per se requirement that a witness' address be divulged upon demand." Id. Rather, our predecessor recognized an exception for "instances in which the physical safety of the witness or his family might be endangered by disclosure." Id. Our predecessor concluded that, because the

_____

the Supreme Court noted that the record was devoid of any indication that defense counsel knew the witness's real name or residence. Id. at 131 n.5, 88 S.Ct. at 749. In holding that this cross-examining scenario deprived the defendant of his confrontation right, the Supreme Court reasoned that

> when the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

Id. at 131, 88 S.Ct. at 750 (quotations omitted).

witness in question (1) had given enough information to "place [him] in his proper setting" and to allow effective cross-examination and (2) had a reasonable fear for his and his family's safety, the district court did not abuse its discretion in sustaining the government's objection to examination of his home address. Id. at 52.

In Siegfriedt v. Fair, 982 F.2d 14, 18-19 (1st Cir. 1992) (persuasive authority), the First Circuit held that the district court had not violated the defendant's right to confrontation by allowing a witness to testify using a pseudonym at a probable cause hearing because the witness already had been using the pseudonym as an alias outside of the courtroom and because the defendant knew the witness' real name, performed an investigation, and presented impeachment evidence. In Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir. 1991) (persuasive authority), the Ninth Circuit held that the district court had not violated the Confrontation Clause by allowing a witness to testify without revealing his real name, reasoning that "there is no absolute right of an accused to have a jury hear a witness's true name" and that the defendant knew the witness' real name and could, therefore, conduct an out-of-court investigation and in-court examination.

The district court did not violate Maso's right to confront witnesses by allowing the CW to testify using a pseudonym. See U.S. Const. amend. VI. Our

10

predecessor has approved a restriction on revealing potentially sensitive information when the witness demonstrated a reasonable fear for his and his family's safety. See Alston, 460 F.2d at 51-52.[4] Also, we are persuaded by our sister circuits' approvals of restrictions on revealing a witness's real name when the government previously had informed the defendant of the witness's real name. See Siegfriedt, 982 F.2d at 18-19 (persuasive authority); Clark, 958 F.2d at 855 (persuasive authority). Here, the CW demonstrated a reasonable fear for his and his family's safety, explaining that someone had communicated a threat on him and his family to his father in Mexico, someone had approached his family in Washington state for information on his then-current identity and whereabouts, and someone had hired a hit man to kill him. See Alston, 460 F.2d at 51-52. Also, the government revealed the CW's real name to Maso in advance of his trial, and Maso effectively explored the CW's past on cross-examination, asking questions about his compensation for working as a DEA and his own prior drug activity. See Siegfriedt, 982 F.2d at 18-19 (persuasive authority); Clark, 958 F.2d at 855 (persuasive authority). Accordingly, as the CW established a reasonable fear for his and his family's safety and as the government disclosed the CW's real name to

---

[4]See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to October 1, 1981).

Maso in advance of trial, such that Maso's ability to prepare his defense was not hampered, the district court did not violate Maso's right to confront witnesses by allowing the CW to testify using a pseudonym. Therefore, we affirm Maso's conviction.

**AFFIRMED.**